BRIAN D. BOYLE (S.B. #126576)
bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

CATALINA J. VERGARA (S.B. #223775)
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

In re Disney ERISA Litigation

Case No. 2:16-cv-02251-PA-JC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: November 14, 2016
Time: 1:30 p.m.
Judge: Hon. Percy Anderson
Courtroom: 15

Complaint Filed: August 26, 2016
Trial Date: None set

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. PLAINTIFFS' IMPRUDENCE CLAIM FAILS AS A MATTER OF LAW. ........ 3

A. Plaintiffs' Claim Is Erroneously Premised On An Alleged Violation Of The Sequoia Fund's Concentration Policy. ........ 3

B. Plaintiffs Cannot Plausibly Allege That A Prudent Plan Fiduciary Would Have Removed The Fund From The Plan Lineup. ........ 6

C. Plaintiffs' Allegations Regarding The Alleged "Riskiness" Of The Sequoia Fund Have Either Been Abandoned Or Are Unsustainable. ........ 7

III. PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM FOR BREACH OF THE FIDUCIARY DUTY OF LOYALTY ........ 10

IV. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvidres v. Countrywide Finan. Corp.*, No. 07-cv-05810, 2008 WL 819330 (C.D. Cal. Mar. 18, 2008) ........ 12

*Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728 (7th Cir. 2006) ........ 7

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) ........ 11

*Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) ........ 8, 9

*Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1996) ........ 11

*In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510 WHA, 2010 WL 1261705 (N.D. Cal. Mar. 30, 2010) ........ 6

*In re Fremont Gen. Corp. Litig.*, 564 F. Supp. 2d. 1156 (C.D. Cal. 2008) ........ 11

*Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund v. Bank of N.Y. Mellon Corp*, No. 13-C-1844, 2015 WL 1234091 (N.D. Ill. Mar. 16, 2015) ........ 9, 10

*Kanawi v. Bechtel*, 590 F. Supp. 2d 1213 (N.D. Cal. 2008) ........ 11

*Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011) ........ 10

*Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705 (2d Cir. 2013) ........ 7

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012) ........ 5

*Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56 (2d Cir. 2016) ........ 9

*White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ........ 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

### STATUTES

ERISA § 404(a), 29 U.S.C. § 1104(a) ........................................................2, 10, 11

### REGULATIONS AND AGENCY GUIDANCE

*BlackRock Multi-Sector Income Tr.*, SEC No-Action Letter, 2013 WL 3477065 (July 8, 2013) ........................................................5

*First Austl. Fund, Inc.*, SEC No-Action Letter, 1999 WL 562159 (July 29, 1999) ........................................................5

Form N–1A Guidelines and Related Staff Positions, 63 Fed. Reg. 13,916........................................................4, 5

Guide 18 to SEC Form N-3, *available at* https://www.sec.gov/about/forms/formn-3.pdf. ............................5, 6

Guide 19 to SEC Release No. 6479, 1983 WL 35814 (Aug. 12, 1983) ........................................................3, 4, 5

*Morgan Stanley Mortg. Secs. Tr.*, SEC No-Action Letter, 2013 WL 3477067 (July 8, 2013) ........................................................5

**I. INTRODUCTION**

Plaintiffs' opposition significantly narrows the claims they have pleaded, but this newly-narrowed theory of liability still fails as a matter of law. Notwithstanding the allegations in their Consolidated and Amended Class Action Complaint, plaintiffs no longer argue that (i) offering a non-diversified investment option like the Sequoia Fund (the "Fund") to the participants of the Disney Savings and Investment Plan (the "Plan") was imprudent *per se* (*see* Pls.' Opp'n (Dkt. 45) at 2, 6–7); (ii) "price swings" experienced by the Fund over the relevant time period rendered it an imprudent investment option (*id.* at 11); or (iii) the Fund was an imprudent option because of any underlying "problems with Valeant in particular" (*id.* at 13). Instead, their fiduciary breach claim now comes down to this: The Sequoia Fund allegedly "stopped being a prudent investment" in 2015, when plaintiffs claim it "departed from its stated policies by over-concentrating its investments in a single company," Valeant Pharmaceuticals, Inc. ("Valeant"). (*Id.* at 1.) According to plaintiffs, the Plan fiduciaries breached their duties of loyalty and prudence by continuing to offer the Fund to Plan participants after that time. (*Id.*)

But plaintiffs have not alleged facts sufficient to state a claim that the Sequoia Fund did, in fact, violate its concentration policy—much less that a prudent fiduciary would necessarily have so concluded and removed the Fund from the Plan lineup on that ground. The Fund's concentration policy defines "concentration" according to SEC regulations and guidance, which provide that mutual funds cannot become over-concentrated through appreciation alone. Plaintiffs attempt to dismiss this guidance—Guide 19, one of 33 "Guidelines" published by the SEC in 1983 with its formal rule adopting Form N–1A—by arguing that it was "rescinded" in 1998 (Dkt. 45 at 7–8), but that is simply not true. The SEC's 1998 amendments expressly endorsed Guide 19, and the SEC has continued to cite Guide 19 as instructive on concentration issues, including in "No-Action" letters issued as

recently as 2013. It remains, to this day, applicable SEC guidance on the appropriate construction and interpretation of mutual fund concentration policies, and thus negates the very premise on which plaintiffs' claim rests: that the Sequoia Fund became "over-concentrated," and thus imprudent, when its holdings of Valeant stock appreciated to over 25% of the Fund's assets in 2015.

Even if plaintiffs were correct in characterizing Guide 19 as "rescinded"—and they are not—their fiduciary breach claims would still fail, because they cannot show that prudent fiduciaries would have removed the Sequoia Fund from the Plan lineup in light of the information available to them in 2015. Indeed, however correct plaintiffs' categorization, it is unquestionable that the SEC continued to express reliance on Guide 19. Given that, it cannot lie that a prudent fiduciary could be held accountable for failing to conclude in 2015 that the appreciation of the Valeant stock held by the Sequoia Fund would have caused the Fund to violate its concentration policy. And with that, there is nothing left of the claim. As plaintiffs have abandoned any imprudence claim premised on anything other than over-concentration, they cannot ground their claim on the theory that one of Sequoia's underlying holdings, Valeant, was excessively "risky." Nor can they assert that the Plan fiduciaries' process for selecting, monitoring, and removing investment options from the lineup was defective in any respect, as they offer only naked conclusions on that front.

Plaintiffs' disloyalty claim is likewise meritless. To paper over the fact that they have failed to allege any specific facts to support the claim (beyond their allegations of imprudence), they argue that "a breach of loyalty claim is viewed under the same standard as a breach of prudence claim." (Dkt. 45 at 16.) That is not true, as ERISA § 404(a)(1)(A) and the applicable cases make clear. To state a viable claim for breach of the duty of loyalty, plaintiffs must allege facts showing the Plan fiduciaries were somehow conflicted in the execution of their duties. They have not done so here.

For these reasons, explained further below, defendants respectfully request that the Court dismiss plaintiffs' claims in their entirety.

## II. PLAINTIFFS' IMPRUDENCE CLAIM FAILS AS A MATTER OF LAW.

### A. Plaintiffs' Claim Is Erroneously Premised On An Alleged Violation Of The Sequoia Fund's Concentration Policy.

Plaintiffs' imprudence claim rests on the notion that the Plan fiduciaries "breached their duty of prudence by continuing to offer the Sequoia Fund as a Plan investment option during the Class Period even when it violated and continued to violate its concentration policies." (Dkt. 45 at 10.) Core to that claim is the assumption that the Fund violated its concentration policy starting in 2015. (*Id.* at 11 (explaining that plaintiffs "claim[] imprudence based on inaction in the face of the Fund's over-concentration in a single stock").) Indeed, plaintiffs assert no other basis for the supposed imprudence of retaining the Fund.[1]

But as explained in defendants' opening brief, that core assumption is simply false. (*See* Defs.' Mot. to Dismiss (Dkt. 39-1) at 13–17.) The applicable SEC guidance defines "concentration" as 25% or greater of a fund's net assets, but provides that a mutual fund that does not intend to be concentrated does not cross the 25% threshold based solely on the appreciation of a particular investment position (or the depreciation of the fund's other positions). *See* Guide 19 to SEC Release No. 6479, 1983 WL 35814, at *73 (Aug. 12, 1983) ("[W]hen securities of a

[1] Plaintiffs make passing reference to the Plan fiduciaries' duty to monitor, but their bare allegations add nothing to their prudence claim. They claim that a prudent monitoring process would have involved Plan fiduciaries "reviewing . . . the Fund's investment strategy, guidelines, and policies"; "ensur[ing] that the Fund conformed with the Plan's investment guidelines"; "monitor[ing] . . . performance and fees and relevant organizational changes"; "review[ing] the reports of the Plan's funds"; and "meet[ing] (in-person and by telephone) with the management of [the Fund]" (Dkt. 45 at 9–10), but allege no facts even remotely suggesting that the Plan fiduciaries neglected any of these tasks.

given industry come to constitute more than 25 percent of the value of the registrant's assets by reason of changes in value of either the concentrated securities or the other securities, the excess need not be sold."). Here, the Sequoia Fund's Valeant shares simply appreciated in value beyond the 25% threshold, and plaintiffs do not allege that the Fund's purchases of Valeant shares triggered concentration. (*See* Dkt. 39-1 at 15.) Under Guide 19, there was thus no violation of the Fund's concentration policy.

Plaintiffs try to avoid the application of Guide 19 by arguing that it was "rescinded" by a 1998 amendment issued by the SEC. (Dkt. 45 at 7–8 (citing 63 Fed. Reg. 13,916 at 13,918 (Mar. 23, 1998)).) They claim that the 1998 release made "sweeping revisions" to the 1983 guidance on prospectus disclosure and that "the SEC determined that the guides to the 1983 Release, including Guide 19 upon which Defendants rely, would not remain in effect." (Dkt. 45 at 7–8 (emphasis removed).) The SEC made no such determination. Plaintiffs' contention that Guide 19 has been rescinded is mistaken for several reasons:

- *First*, the text of the 1998 amendment contains no language suggesting that all of the guidelines issued with the 1983 Release were void, rescinded, or contrary to the position of the SEC. Although the amendment does state that the 1983 Guides would not be republished with the 1998 amendment to Form N–1A, in part because certain of them had "become outdated," it also acknowledges that "certain disclosure requirements from the Guides" were incorporated into Form N–1A, "as amended." 63 Fed. Reg. at 13,940, Section 6 ("Form N–1A Guidelines and Related Staff Positions") & n.214. Guide 19 was not listed in the amendment among the "outdated" guidelines. *Id.* at n.211 & n.212.
- *Second*, the 1998 Amendment left the rules regarding concentration policies, including Guide 19, intact. Specifically, the amendment maintained the requirement that mutual funds disclose concentration

policies on their Form N–1A, and kept the 25% threshold to define concentration. *Id.* at 13,927. In justifying this "continue[d]" requirement, the SEC favorably cited Guide 19 from the 1983 Release, thus endorsing its continued force. *Id.* at 13,927 n.99.[2]

- *Third*, in the years since the 1998 Amendment, the SEC has continued to cite Guide 19 as authoritative on concentration issues in a series of "No-Action" letters—most recently, in 2013. *See Morgan Stanley Mortg. Secs. Tr.*, SEC No-Action Letter, 2013 WL 3477067 (July 8, 2013); *BlackRock Multi-Sector Income Tr.*, SEC No-Action Letter, 2013 WL 3477065 (July 8, 2013); *First Austl. Fund, Inc.*, SEC No-Action Letter, 1999 WL 562159 (July 29, 1999). These letters do not specifically address the appreciation exception to over-concentration, but they nonetheless demonstrate that the SEC views Guide 19 as continuing currently.

- *Finally*, continuing to apply Guide 19's appreciation exception would not create an anomaly, because the SEC applies it to other registrants as well. Guide 18 to Form N–3, which is an SEC registration form used by "separate accounts offering variable annuity contracts," mirrors Guide 19. (Guide 18 to SEC Form N–3, *available at* https://www.sec.gov/about/forms/formn-3.pdf.) It contains the same concentration disclosure requirement, the same 25% concentration threshold, and the same appreciation exception, providing: "[W]hen securities of a given industry constitute more than 25 percent of the value of the registrant's assets as a

---

[2] Defendants submit that the 1998 amendment's endorsement of Guide 19 should prevail over any general classification of the guidelines as inapplicable, consistent with basic canons of statutory interpretation. *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("[I]t is a commonplace of statutory construction that the specific governs the general.").

result of change in value of either concentrated securities or other securities, the excess need not be sold." (*Id.* at 41.)

Plaintiffs ignore all of this, as well as the SEC's later regulatory and enforcement activity, in asserting that, merely because the Guides were not collectively republished in 1998, the SEC determined that they would no longer remain in effect. (Dkt. 45 at 7–8.) There is no support for their position that Guide 19 was "withdrawn," and the one unpublished case they cite, *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510 WHA, 2010 WL 1261705 (N.D. Cal. Mar. 30, 2010), is inapposite. (*See* Dkt. 45 at 8.) That case has nothing to do with the appreciation exception to concentration. Instead, the court in that case was asked to determine whether a fund's decision to classify mortgage-backed securities as separate from any other "industry" (for purposes of complying with the fund's diversification policy) required a shareholder vote. *In re Charles Schwab*, 2010 WL 1261705, at *1.

In short, there is no reason to doubt the clear guidance articulated in Guide 19 that an investment's appreciated growth above 25% does not violate a mutual fund's concentration policy. This straightforward guidance, coupled with the plain language of the 1998 Amendment and the SEC's recent endorsement of both Guide 19 and an appreciation exception to concentration, forecloses any doubt regarding Guide 19's continued viability, and eviscerates plaintiffs' imprudence claim. And while plaintiffs make casual reference to the fiduciary process for monitoring investments, they allege no concrete facts suggesting that the Plan fiduciaries' monitoring process was in any way flawed. Plaintiffs' imprudence claim thus fails as a matter of law.

### B. Plaintiffs Cannot Plausibly Allege That A Prudent Plan Fiduciary Would Have Removed The Fund From The Plan Lineup.

Even if the Court were to accept plaintiffs' view that Guide 19 has been "withdrawn"—which is not the case—plaintiffs still would not be able to state a

viable claim for fiduciary breach. Where a plaintiff premises an imprudence claim not on direct allegations about the fiduciaries' decision-making, but rather on circumstantial evidence, the law requires him to "allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently." *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.* ("*St. Vincent*"), 712 F.3d 705, 720 (2d Cir. 2013). Here, given that the SEC's 1998 amendments did not explicitly withdraw Guide 19, that the amendments actually cited Guide 19 with approval, and that the SEC continued to cite Guide 19 after 1998, it cannot be posited that a reasonable fiduciary was required to conclude, in 2015, that the appreciation in the Sequoia Fund's Valeant stock to more than 25% of the Fund's assets was a violation of the Fund's concentration policy. It is even more far-fetched to contend that a reasonable fiduciary would necessarily have removed the Fund from the Plan's lineup on this basis, particularly where the lineup included a broad range of fully-diversified alternatives for participants to consider. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) (fiduciary decision-making requires the "balancing of competing interests under conditions of uncertainty," and is reviewed "deferentially" by the courts).[3]

### C. Plaintiffs' Allegations Regarding The Alleged "Riskiness" Of The Sequoia Fund Have Either Been Abandoned Or Are Unsustainable.

Although plaintiffs now insist that their imprudence claim turns entirely on the Sequoia Fund's violation of its concentration policy, and that they are not alleging the Fund was imprudent "because there were problems with Valeant in particular" (Dkt. 45 at 13), they nonetheless repeat their refrain that Valeant (and

[3] Significantly, the prospectuses available to Plan participants describe the Sequoia Fund as making more concentrated bets on individual securities than fully diversified investment alternatives. (2015 Sequoia Fund Prospectus (Dkt. 39-11) at 2.)

thus the Sequoia Fund) "was simply too risky" to be offered to Plan participants (*id.* at 1). But the refrain is untethered to any legal theory that the Plaintiffs continue to pursue. Either plaintiffs are alleging that Valeant's "riskiness" rendered the Fund imprudent, requiring its removal, or they are not. Plaintiffs have unequivocally stated that they are not.

Compounding the confusion, plaintiffs take issue with defendants' reference to *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), which defendants cited for the proposition that ERISA fiduciaries do not act imprudently in relying on public information about a publicly traded security, absent special circumstances. (*See* Dkt. 39-1 at 17–21.) As plaintiffs put it, "[n]one of this analysis" of *Dudenhoeffer* "has anything to do with this case." (Dkt. 45 at 15.) If plaintiffs meant what they said, and are not claiming that the excessive "riskiness" of Valeant's stock required the Plan fiduciaries to remove the Fund from the Plan's lineup, they are right that the "efficient market hypothesis" explained in *Dudenhoeffer* would not come into play. But, to the extent plaintiffs are alleging that the Plan fiduciaries should have removed the Fund not only because it was allegedly over-concentrated in Valeant securities but also because there were "numerous problems and red flags surrounding Valeant" (Dkt. 45 at 5), notwithstanding their concession, *Dudenhoeffer* is directly controlling and dispositive, as explained in defendants' opening brief. (*See* Dkt. 39-1 at 17–21.)

In *Dudenhoeffer*, the Supreme Court held that a prudence claim premised on a plan fiduciary's decision not to remove an "excessively risky" investment is implausible when the plaintiff's allegations about the investment's risks rest solely on publicly available information. 134 S. Ct. at 2464, 2471 (considering claim that plan fiduciaries should have known, and should have removed, an investment offering on the basis of publicly available information that the investment was "overvalued and excessively risky"). In accord with *Dudenhoeffer*, the Second Circuit later dismissed a claim very similar to the one raised by plaintiffs here. *See*

*Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56 (2d Cir. 2016). In *Rinehart*, the plaintiffs claimed—as plaintiffs do here—that the plan's fiduciaries "knew or should have known, based on publicly available information, that investment in Lehman had become increasingly risky through 2008, and that failing to consider the wisdom of continuing to invest in Lehman during this period constituted a breach of fiduciary duty." *Id.* at 65. They also attempted to plead around *Dudenhoeffer* by arguing that their claims concerned "excessive risk" inherent in the investment at issue, rather than the investment's market value. The court rejected that distinction, finding that "the purported distinction between claims involving 'excessive risk' and claims involving 'market value' is illusory." *Id.* at 65–66. It concluded that *Dudenhoeffer* "forecloses breach of prudence claims based on public information *irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness* of a stock." *Id.* (emphasis in original, internal quotation marks omitted).

Plaintiffs try to get around this result by arguing that *Dudenhoeffer* applies only to cases involving employee stock ownership plans ("ESOPs"), but that is a fabrication. (*See* Dkt. 45 at 13–14.) The "efficient market hypothesis" is a principle with general applicability far beyond the ESOP context. Moreover, in *Dudenhoeffer*, the Supreme Court explicitly declined to create an "ESOP-specific rule" for the standard of prudence applicable to all fiduciaries, and held instead that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." 134 S. Ct. at 2467.[4]

---

[4] Plaintiffs take *Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund v. Bank of N.Y. Mellon Corp*, No. 13-C-1844, 2015 WL 1234091 (N.D. Ill. Mar. 16, 2015) ("*Local No. 710*") out of context as well. (Dkt. 45 at 13–14.) In no way does the case support the proposition that *Dudenhoeffer*'s articulation of general prudence principles is limited to the ESOP context. Regardless, the case is of limited

(*footnote continued next page*)

Plaintiffs' complaints about the risks inherent in the Sequoia Fund's fully disclosed investment strategy are particularly ungrounded here, given that a diversified array of 401(k) investment options (like that offered to Plan participants) necessarily includes a variety of options along the risk/reward spectrum. There is nothing inherently suspect about offering participants an alternative that is not itself diversified, which may carry with it higher risk but also the potential for higher rewards, in a broad menu of options. *See Loomis v. Exelon Corp.*, 658 F.3d 667, 673–74 (7th Cir. 2011) (noting that a fiduciary that "offer[s] participants a menu that includes high-expense, high-risk, and potentially high-return funds, together with low-expense index funds that track the market, and low-expense, low-risk, modest-return bond funds . . . has left choice to the people who have the most interest in the outcome, and it cannot be faulted for doing this."). Indeed, the Plan's Investment Policy Statement explicitly requires fiduciaries to offer participants a range of options with different risk and reward profiles designed for long-term retirement investing—and plaintiffs have now conceded that offering the Fund to Plan participants did not violate the Plan documents. (*See* Dkt. 39-1 at 11; Investment Policy Statement (Dkt. 39-4) at 5.) Under these circumstances, plaintiffs' references to the alleged riskiness of one of the securities in the Fund's portfolio cannot amount to a legally cognizable claim.

## III. <u>PLAINTIFFS HAVE FAILED TO PLEAD A CLAIM FOR BREACH OF THE FIDUCIARY DUTY OF LOYALTY.</u>

Plaintiffs' disloyalty claim also fails as a matter of law. They do not rebut defendants' argument that they have failed to allege any facts that suggest the Plan fiduciaries failed to act "for the exclusive purpose of . . . providing benefits to

---

applicability here, as it pertained to whether the riskiness of Lehman bonds rendered Lehman an unsuitable counterparty for securities lending transactions—not whether the market had over-valued Lehman bonds. *Local No. 710*, 2015 WL 1234091, at *3.

participants." ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); *see also Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (duty of loyalty requires plan fiduciaries to act with "an eye single to the interests of the participants and beneficiaries"). Instead, they double down on their deficient allegations and erroneously argue that "a breach of loyalty claim is viewed under the same standard as a breach of prudence claim." (Dkt. 45 at 16.) The case law proves otherwise. In fact, courts regularly dismiss disloyalty claims where, as here, plaintiffs "do[] not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and include[] no separate allegations to support the duty of loyalty claim." *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) (dismissing disloyalty claim).

The cases cited by plaintiffs do not change this result. They cite *Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1996), and *Kanawi v. Bechtel*, 590 F. Supp. 2d 1213 (N.D. Cal. 2008), for the proposition that courts view the duties of loyalty and prudence as interchangeable—but that is not the law, and plaintiffs misrepresent the cases' holdings in suggesting otherwise. In both of these cases, the claims centered on allegations of self-dealing that necessarily implicated loyalty questions, and plaintiffs *did* allege facts pertaining to the duty of loyalty (unlike plaintiffs here). *Howard*, 100 F.3d at 1486 (plaintiffs alleged plan disloyally purchased shares of company stock owned by plan fiduciary, who was also president and chairman of same company); *Kanawi*, 590 F. Supp. at 1227, 1229 (plaintiff alleged that defendant's decisions to hire a division of its own company and pay allegedly unnecessary layers of fees were violations of duty of loyalty); *see also In re Fremont Gen. Corp. Litig.*, 564 F. Supp. 2d. 1156, 1157 (C.D. Cal. 2008) (complaint addressed defendant's purchase and retention of its own company's stock). In contrast, none of plaintiffs' theories of liability here involve claims of self-dealing, and plaintiffs have failed to adduce any facts whatsoever that pertain to the duty of loyalty. In the absence of any supporting law excusing plaintiffs'

failure to plead facts in support of their disloyalty claim, this claim must be dismissed.[5]

## IV. CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss plaintiffs' Consolidated and Amended Class Action Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: October 31, 2016

Respectfully submitted,

O'MELVENY & MYERS LLP

By: /s/ Catalina J. Vergara
Catalina J. Vergara

BRIAN D. BOYLE
bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

CATALINA J. VERGARA
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Attorneys for Defendants*

[5] The fourth case cited by plaintiffs, *Alvidres v. Countrywide Financial Corp.*, No. 07-cv-05810, 2008 WL 819330 (C.D. Cal. Mar. 18, 2008), is inapposite, in that there was no disloyalty claim at issue in the motion to dismiss. *Id.* at *1 (noting defendant moved to dismiss only prudence and disclosure claims).