UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes Kerr | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss filed by defendants Investment and Administrative Committee of the Walt Disney Company Sponsored Qualified Benefit Plans and Key Employees Deferred Compensation and Retirement Plan, and committee members Christine McCarthy, Mary Jayne Parker, Jeffrey Shapiro, James Rasulo, Alan Braverman, Brent Woodford, and Jonathan Headley (collectively, the "Plan") (Docket No. 39).  The Plan challenges the sufficiency of the Consolidated and Amended Complaint ("Consolidated Complaint") filed by plaintiffs Jack Wilson, William Gaudette, and Patricia Du Vall (collectively "Plaintiffs") on behalf of themselves and a putative class.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for November 14, 2016, is vacated, and the matter taken off calendar.

I.      **Factual and Procedural Background**

The Court ordered Plaintiffs to file the Consolidated Complaint after consolidating this action with a second action, Case No. CV 16-4743 PA (JCx).  The Consolidated Complaint alleges two claims for relief.  In the first claim, the Consolidated Complaint alleges that the Plan breached is duties under ERISA to prudently and loyally manage the Plan and assets of the Plan pursuant to 29 U.S.C. § 1104(a).  The second claim, which is derivative of the first claim, seeks to impose liability against both the Plan and individual members of the Plan committee for ERISA co-fiduciary liability pursuant to 29 U.S.C. § 1105(a).

The Plan is a defined contribution plan.  As of the end of 2014, the Plan had over 54,000 participants and assets of over $5.8 billion.  Participants in the Plan can allocate their individual Plan accounts among a number of investment options reflecting a broad range of investments styles and risk profiles.  One of the investment options included in the Plan is the Sequoia Fund, a mutual fund managed by Ruane, Cunniff & Goldfarb, Inc. (the "Sequoia Fund").  The Sequoia Fund describes itself as "non-diversified" and that it "invests its assets in a smaller number of companies than many other funds."  According to the Sequoia Fund's annual report dated December 31, 2015, it had a 5 year annualized rate of return of 11.93%, compared to the Standard & Poors 500 Index's ("S&P") 12.57% rate of return, and a 10 year annualized rate of return of 7.58%, compared to the S&P's rate of return of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

12.57% for the same period. In 2013, the Sequoia Fund's rate of return was 34.58%. However, in 2015, the Sequoia Fund lost 7.31% for the year, compared to a 1.38% gain by the S&P. The Sequoia Fund's performance for the final quarter of 2015 was even worse. During that quarter, the Sequoia Fund lost 9.10%, compared to a gain of 7.04% by the S&P.

The Sequoia Fund's 2015 annual report blamed the poor performance on its investment in Valeant Pharmaceuticals. According to the Sequoia Fund:

> We began the year with a 20% weighting in Valeant Pharmaceuticals. Valeant rose by more than 80% through the summer, driving very strong gains for the Fund. But the price collapsed in the fall amid revelations and allegations about the company's business practices. Ultimately, Valeant declined 29% for the year and by more than 70% from its 52-week high to its low. We bought more shares in October, and we calculate that Valeant contributed -6.3% to Sequoia's return of -7.3% for the year.

(Catalina Vergara Decl., Ex. Q at 5.) On October 25, 2015, two of the Sequoia Fund's four independent directors resigned to publicly voice their dissent over the Fund's investment strategy. The Sequoia Fund announced on May 31, 2016, that it had sold half of its holdings in Valeant, reducing its ownership of Valeant to less than 5% of its holdings.

The Consolidated Complaint alleges that by March 2014, some in the financial community began criticizing Valeant. (Consolidated Complaint, ¶¶ 74-78.) These concerns about Valeant continued into 2015. (Id., ¶ 80.) The Consolidated Complaint alleges that these "serious questions about Valeant's business model and accounting methods long before its precipitous decline [in October 2015] should have alerted [the Plan] that the Sequoia Fund's substantial investment in Valeant made the Sequoia Fund an imprudent investment for the Plan's participants." (Id., ¶ 74.) Plaintiffs seek to represent a class defined as:

> All persons, excluding Defendants, who were participants in or beneficiaries of the Plan at any time from January 1, 2015 up to and including the date of judgment in this action (the "Class Period") and whose Plan accounts included investments in the Sequoia Fund (the "Class").

(Id., ¶ 124.) According to the Consolidated Complaint, the Plan "had a duty to follow a regular, appropriate systematic procedure to evaluate the prudence of maintaining the [Sequoia] Fund as an investment in the Plan." (Id., ¶ 138.) More specifically, according to Plaintiffs, given that the Sequoia Fund was "non-diversified," "its open violation of its concentration Policy, Sell Strategy, and Value Policy, the widespread public disclosure about the riskiness of Valeant, its poor performance, and its high fees, such an investigation would have revealed to a reasonably prudent fiduciary by no later than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

September 2015 the imprudence of continuing to offer the Fund as an investment option or make and maintain investment in the Fund." (Id.)

**II.     Legal Standard**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

**III.     Analysis**

      "An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." Tibble v. Edison Int'l, __ U.S. __, 135 S. Ct. 1823, 1828, 191 L. Ed. 2d 795 (2015) (quoting 29 U.S.C. § 1104(a)(1)). "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." Id. "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." Id. A trustee's monitoring and review of investments "'is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved.'" Id. (quoting Restatement (Third) of Trusts § 90 cmt. b (2007)). "In short, under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." Id., 135 S. Ct. at 1828-29.

      "Because the content of the duty of prudence turns on 'the circumstances prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, __ U.S. __, 134 S. Ct. 2459, 2471, 189 L. Ed. 2s 457 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B). In the ERISA fiduciary context, the Supreme Court has described motions to dismiss for failure to state a claim as "one important mechanism for weeding out meritless claims." Id. Considering a motion to dismiss in this context "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." Id. According to the Supreme Court:

> [W]here a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances. Many investors take the view that "they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information," and accordingly they "rely on the security's market price as an unbiased assessment of the security's value in light of all public information. ERISA fiduciaries who likewise could reasonably see "little hope of outperforming the market . . . based solely on their analysis of publicly available information" may as a general matter likewise prudently rely on the market price.

Id. (citations omitted) (quoting Halliburton Co. V. Erica P. John Fund, Inc., __ U.S. __, 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014); see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 721 (2d Cir. 2013) ("[T]he decline in the price of a security does not, by itself, give rise to a plausible inference that the security is no longer a good investment. Rather, the allegation of a decline in price indicates only that the security turns out to have been, in hindsight, a bad investment. As we have explained, an allegation that an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

investment's price dropped, even precipitously, does not alone suffice to state a claim under ERISA.") (citations omitted).

As Dudenhoeffer instructs, the precipitous decline in the value of Valeant's stock does not alone suggest that Plaintiffs have stated a plausible fiduciary duty claim against the Plan. The Consolidated Complaint contains no allegations of "special circumstances" that could support even an inference that the Plan had any reason not to rely on the market's valuation of Valeant up until the collapse in its price. More fundamentally, the Consolidated Complaint alleges no facts plausibly suggesting that the Plan had any reason to investigate the prudence of continuing to include the Sequoia Fund as one of the investment options for the Plan's participants beginning on January 1, 2015, when the putative class period begins. The Plan's inclusion of the Sequoia Fund appears to have been for the purpose of providing an investment option that offered higher growth potential with commensurate higher risk. Within that context, the Consolidated Complaint has alleged no facts that plausibly allege that the Plan breached its duty to prudently monitor and review the Plan's inclusion of the Sequoia Fund as an investment option "in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." Tibble, __ U.S. at __, 135 S. Ct. at 1828, 191 L. Ed. 2d 795.

Particularly implausible, under Plaintiff's theory of liability, is the implication that problems at Valeant, which the market price did not capture, somehow triggered the Plan's duty of prudence to remove the Sequoia Fund from the Plan, at some unspecified date in 2015. Without any factual allegations suggesting a situation that would cause a reasonably prudent fiduciary to remove the Sequoia Fund from the Plan's investment options during the class period prior to the precipitous drop in Valeant's stock price, and the resulting loss of value for the Sequoia Fund, Plaintiffs have failed to state a viable claim that the Plan breached its duty of prudence. Indeed, Plaintiffs' theory of liability, if accepted, would require Plan fiduciaries to monitor the market and publicly available information about every holding maintained by every mutual fund included within the Plan, the concentration of all stocks held by each mutual fund within the Plan, and whether that concentration was the result of an imprudent acquisition of additional shares or the dramatic appreciation in value of any particular mutual fund's original investment. Plaintiffs have cited to no case that establishes that the duty of prudence imposes such obligations, and the Court concludes that such a duty would not be reasonable or appropriate in the context within which the Plan operated during the relevant time period.

Although the Consolidated Complaint also alleges that the Plan breached its fiduciary duty of loyalty, Plaintiffs have alleged no facts plausibly suggesting any sort of self-dealing or other disloyal conduct by the Plan or the individual members of the Plan's committee. As Plaintiffs explain in their Opposition to the Motion to Dismiss, "a breach of loyalty claim is viewed under the same standard as a breach of prudence claim. Both look to the thoroughness of the investigation and neither is dependent on conflicts and self-dealing." Even if Plaintiffs' description of the relevant law is accurate, and the standard for a breach of loyalty claim is identical to a breach of prudence claim, their breach of loyalty claim would then fail for the same reasons that they have failed to allege a viable breach of prudence claim. Finally, the Consolidated Complaint's second claim for co-fiduciary liability is derivative of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | November 14, 2016 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

Consolidated Complaint's first claim for breach of fiduciary duty.  Because the first claim for relief fails to state a viable claim, the second claim necessarily fails to state a viable claim as well.

## Conclusion

For all of the foregoing reasons, the Court grants the Motion to Dismiss.  Although Plaintiffs did not specifically request leave to amend, Plaintiffs shall have until December 5, 2016, to file a First Amended Consolidated Complaint.  If Plaintiffs have not filed a First Amended Consolidated Complaint by that date, the Court will issue a Judgment dismissing this action with prejudice.

IT IS SO ORDERED.