UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| V.R. Vallery | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   IN CHAMBERS – COURT ORDER

Before the Court is a Motion to Dismiss Plaintiffs' Second Amended Complaint filed by defendants Investment and Administrative Committee of the Walt Disney Company Sponsored Qualified Benefit Plans and Key Employees Deferred Compensation and Retirement Plan, and committee members Christine McCarthy, Mary Jayne Parker, Jeffrey Shapiro, James Rasulo, Alan Braverman, Brent Woodford, and Jonathan Headley (collectively, the "Plan") (Docket No. 39).  The Plan challenges the sufficiency of the Second Consolidated and Amended Class Action Complaint ("Second Consolidated Complaint" or "SCC") (Docket No. 51) filed by plaintiffs Jack Wilson, William Gaudette, and Patricia Du Vall (collectively "Plaintiffs") on behalf of themselves and a putative class. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.

**I.      Background**

The Walt Disney Company ("Disney") offers a number of retirement benefits to its employees, including a wide choice of retirement savings and investment vehicles.  (SCC ¶ 2; Ex. A at 11.)  Among these is the Plan, which is a participant-directed individual account plan – meaning that individuals investing in the Plan have an individual account which pays benefits based solely on the amount contributed by the participant.  (Id. ¶¶ 18-21.)  Plan participants are themselves required to select the specific funds into which their individual contributions are invested.  (Id. ¶ 20.)  Plan participants are offered a choice of 26 different funds.  (Id. ¶¶ 49-52.)[1/]  As a result, Plan participants can allocate their individual Plan accounts among a number of investment options, reflecting a broad range of investments styles and risk profiles.  (See id.)

One of the investment options included in the Plan is the Sequoia Fund, a mutual fund managed by Ruane, Cunniff & Goldfarb, Inc. (the "Sequoia Fund" or the "Fund").  (Id. ¶¶ 54)  Plaintiffs allege

---

[1/]      The Plan is required to offer two Disney stock funds as investment options.  (SCC ¶ 22.)  With this exception, the Plan's Committee has the sole discretion to determine the number and character of other funds offered as investment vehicles under the Plan.  (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

that the Sequoia Fund purports to be a value fund. (Id. ¶¶ 54, 56-63.)²⁄ Plan participants have invested more than $500 million in the Sequoia Fund, causing investments in the Fund to account for approximately 12% of all Plan assets not invested in Disney itself. (Id. ¶ 66.)

The Sequoia Fund first began investing in Valeant Pharmaceuticals International, Inc. ("Valeant") in 2010. (Id. ¶ 69.) On September 30, 2010, the Sequoia Fund held over 10 million shares of Valeant, valued at over $250 million. (Id.) Valeant is a pharmaceutical company which slashed its research and development budget to fund acquisitions of other companies. (Id. ¶¶ 73, 77.) In pursuit of this growth-by-acquisition strategy, Valeant spent over $23 billion to acquire seven competitors between 2009 and 2015. (Id. ¶¶ 74-75.) The Sequoia Fund steadily increased its position in Valeant – partly through appreciation in the value of its initial investment and partly through purchases of additional stock – to the point that, on June 30, 2015, over 25% of Sequoia's net assets were invested in Valeant. (Id. ¶¶ 69, 71.)

In August 2015, Valeant stock closed at $262 per share, representing a trade value that was 98 times higher than its earnings. (Id. ¶ 80.) Plaintiffs allege that as a result, Valeant had the "clear indicia" of a growth stock, and did not meed the Sequoia Fund's purported investing criteria of seeking out value stocks. (See id. ¶¶ 81-83.) Despite the soaring stock price in August 2015, concerns emerged about Valeant's accounting practices and investment strategy. (Id. ¶¶ 78-79.) By November 17, 2015, Valeant stock precipitously declined to less than $70 a share, representing a loss of over $65 billion in market value. (Id. ¶ 66.) This caused a corresponding loss of approximately 25% of the value of the Sequoia Fund. (Id.)

Due to its acquisition strategy and questionable accounting practices, Valeant was the subject of intense scrutiny from highly regarded investors, analysts, elected officials, and even independent directors on the Sequoia Fund's board. (Id. ¶¶ 86-88.) In Plaintiffs' view, the Plan "should have been particularly vigilant in reviewing the Sequoia Fund and its investment in Valeant, and in determining that Sequoia had completely ignored the value strategy that was allegedly the foundation of the investment." (Id. ¶ 89.) Plaintiffs allege that the Plan breached its fiduciary duty under ERISA, and seek to represent a putative class consisting of:

> All persons, excluding Defendants, who were participants in or beneficiaries of the Plan at any time from January 1, 2015 up to and including the date of judgment in this action (the "Class Period") and

---

²⁄   The distinction between a value fund and a growth fund is of central importance to Plaintiffs' claims. Generally speaking, growth funds seek to invest in companies that are expected to increase their revenue quickly, and generally purchase stocks with high price-to-earnings, price-to-book, and price-to-sales ratios. (SCC ¶¶ 56-57.) Conversely, value funds seek to purchase bargain stocks which have a low stock value due to factors the investing fund perceives to be unrelated to the value of company, resulting in purchasing stocks with low price-to-earnings, price-to-book, and price-to-sales ratios. (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

    whose Plan accounts included investments in the Sequoia Fund (the "Class").

(Id. ¶ 94.) Plaintiffs' Second Consolidated Complaint alleges two claims for relief. In the first claim, Plaintiffs allege that the Plan breached its duties under ERISA to prudently manage the Plan by offering the Sequoia Fund as an investment vehicle. The second claim, which is derivative of the first claim, seeks to impose liability against both the Plan and individual members of the Plan committee for co-fiduciary liability pursuant to 29 U.S.C. § 1105(a).

  Presently before the Court is the Plan's Motion to Dismiss the Second Consolidated Complaint. The Court previously considered the sufficiency of Plaintiffs' Consolidated Complaint (Docket No. 38) – which advanced identical claims, but under a theory that it was imprudent for the Plan to continue to offer the Sequoia Fund as an investment vehicle after widespread public disclosure about the riskiness of Valeant – and concluded that it failed to state a claim (Docket No. 50).

**II. Legal Standard**

  Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

  However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

**III.    Discussion**

"An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." Tibble v. Edison Int'l, __ U.S. __, 135 S. Ct. 1823, 1828, 191 L. Ed. 2d 795 (2015) (quoting 29 U.S.C. § 1104(a)(1)). "In determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." Id. "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." Id. A trustee's monitoring and review of investments "'is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved.'" Id. (quoting Restatement (Third) of Trusts § 90 cmt. b (2007)). "In short, under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." Id., 135 S. Ct. at 1828-29.

"Because the content of the duty of prudence turns on 'the circumstances prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, __ U.S. __, 134 S. Ct. 2459, 2471, 189 L. Ed. 2d 457 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B). In the ERISA fiduciary context, the Supreme Court has described motions to dismiss for failure to state a claim as "one important mechanism for weeding out meritless claims." Id. Considering a motion to dismiss in this context "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." Id. According to the Supreme Court:

> [W]here a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances. Many investors take the view that "they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information," and accordingly they "rely on the security's market price as an unbiased assessment of the security's value in light of all public information. ERISA fiduciaries who likewise could reasonably see "little hope of outperforming the market . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

> based solely on their analysis of publicly available information" may as a
> general matter likewise prudently rely on the market price.

Id. (citations omitted) (quoting Halliburton Co. v. Erica P. John Fund, Inc., __ U.S. __, 134 S. Ct. 2398, 2411, 189 L. Ed. 2d 339 (2014); see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 721 (2d Cir. 2013) ("[T]he decline in the price of a security does not, by itself, give rise to a plausible inference that the security is no longer a good investment. Rather, the allegation of a decline in price indicates only that the security turns out to have been, in hindsight, a bad investment. As we have explained, an allegation that an investment's price dropped, even precipitously, does not alone suffice to state a claim under ERISA.") (citations omitted).

This is Plaintiffs' second attempt to plead a claim against the Plan for its decision to offer the Sequoia Fund as an investment vehicle to Plan participants. In their first attempt, Plaintiffs' theory of liability was that because "the Sequoia Fund was 'non-diversified,' its open violation of its concentration Policy, Sell Strategy, and Value Policy, the widespread public disclosure about the riskiness of Valeant, its poor performance, and its high fees, such an investigation would have revealed to a reasonably prudent fiduciary by no later than September 2015 the imprudence of continuing to offer the Fund as an investment option or make and maintain investment in the Fund." (Docket No. 38, ¶ 138.) The Court rejected this theory, finding:

> As Dudenhoeffer instructs, the precipitous decline in the value of Valeant's stock does not alone suggest that Plaintiffs have stated a plausible fiduciary duty claim against the Plan. The Consolidated Complaint contains no allegations of "special circumstances" that could support even an inference that the Plan had any reason not to rely on the market's valuation of Valeant up until the collapse in its price. More fundamentally, the Consolidated Complaint alleges no facts plausibly suggesting that the Plan had any reason to investigate the prudence of continuing to include the Sequoia Fund as one of the investment options for the Plan's participants beginning on January 1, 2015, when the putative class period begins. The Plan's inclusion of the Sequoia Fund appears to have been for the purpose of providing an investment option that offered higher growth potential with commensurate higher risk. Within that context, the Consolidated Complaint has alleged no facts that plausibly allege that the Plan breached its duty to prudently monitor and review the Plan's inclusion of the Sequoia Fund as an investment option "in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved." Tibble, __ U.S. at __, 135 S. Ct. at 1828, 191 L. Ed. 2d 795.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

> Particularly implausible, under Plaintiffs' theory of liability, is the implication that problems at Valeant, which the market price did not capture, somehow triggered the Plan's duty of prudence to remove the Sequoia Fund from the Plan, at some unspecified date in 2015. Without any factual allegations suggesting a situation that would cause a reasonably prudent fiduciary to remove the Sequoia Fund from the Plan's investment options during the class period prior to the precipitous drop in Valeant's stock price, and the resulting loss of value for the Sequoia Fund, Plaintiffs have failed to state a viable claim that the Plan breached its duty of prudence. Indeed, Plaintiffs' theory of liability, if accepted, would require Plan fiduciaries to monitor the market and publicly available information about every holding maintained by every mutual fund included within the Plan, the concentration of all stocks held by each mutual fund within the Plan, and whether that concentration was the result of an imprudent acquisition of additional shares or the dramatic appreciation in value of any particular mutual fund's original investment. Plaintiffs have cited to no case that establishes that the duty of prudence imposes such obligations, and the Court concludes that such a duty would not be reasonable or appropriate in the context within which the Plan operated during the relevant time period.

(Docket No. 50 at 5.)

Plaintiffs' Second Consolidated Complaint shifts its theory of liability slightly, but fares no better at stating a claim for relief. Plaintiffs now posit that a reasonably prudent fiduciary in the Plan's position would have removed the Sequoia Fund as an investment option because it invested in a "growth" stock, despite holding itself out as a "value" investor. (See SCC ¶¶ 81-83, 105.) Specifically, Plaintiffs allege that "[a] reasonably prudent fiduciary would have carefully monitored the Sequoia Fund to ensure that it adhered to its purported investment strategy as described to investors in general and to Plan participants in particular." (Id. ¶ 105(c).)

The Plan contends that the classification between "growth" and "value" investment is immaterial to determining whether Plan fiduciaries acted prudently by continuing to offer the Sequoia Fund as an investment option to Plan participants. (Mot. at 10-11.) The Court agrees. There is no authority to support the proposition that the "growth" or "value" styles of portfolio management are preferable to one another, or, as is more relevant here, would constitute a breach of fiduciary duty if pursued as an investment prerogative.

The parties heavily dispute whether the Sequoia Fund held itself out to be a "growth" or a "value" investor. As an initial matter, the Court notes that some of the arguments advanced by the parties purporting to show whether the Sequoia Fund was a value or growth investor border on being

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

frivolous. For example, Plaintiffs assert that when a Sequoia Fund portfolio manager was asked if he intended to keep or reduce the fund's position in Valeant, his answer that "[w]e believe [Valeant] will continue to grow . . . [and] should do quite well," was a representation from the fund to investors that Sequoia was a "growth play." (SCC, ¶ 82.) Similarly, the Plan claims that the Sequoia Fund demonstrated its growth-orientation by announcing a focus on purchasing stocks that "have the potential for growth." (Mot. at 8 (citing SCC, Ex. F at 5).) However, investors simply use these terms to describe their investments; not to also convey their overall investment strategy. An investor purchases a stock because he believes its share price will grow, and thus represents a good value at the time of purchase. It follows that, frequently, no deeper meaning can be ascribed to the use of these terms.

The Court finds that the more relevant inquiry for determining whether the Plan breached its fiduciary duty is to examine what representations the Plan made to its participants about the Sequoia Fund, and whether the Fund acted in a way so inconsistent with that description that a reasonably prudent investor would have discontinued offering the Sequoia Fund as an investment vehicle. Plaintiffs have failed to identify a single instance of the Plan itself classifying the Sequoia Fund as a "growth" or "value" investor. Instead, consistent with its Investment Policy Statement, the Plan divides investment options into three tiers: passive, target date, and active. (See SCC ¶¶ 50-52, 38, Ex. D.) To be sure, Plaintiffs then classify the active tier investment options into money market, growth, and value strategy funds. (See id. ¶ 52(a)-(c).) But as support for those classifications, Plaintiffs point to internet articles rather than any disclosures made by the Plan itself or non-conclusory allegations in the Second Consolidated Complaint. (See id.) Instead, the Plan described the Sequoia Fund to Plan participants as:

> **Strategy:** The fund focuses on investing in equity securities that the adviser believes are undervalued at the time of purchase and have the potential for growth. It normally invests in equity securities of U.S. and non-U.S. companies. The fund may invest in securities of issuers with any market capitalization. It typically sells the equity security of a company when the company shows deteriorating fundamentals, its earnings progress falls short of the investment adviser's expectations or its valuation appears excessive relative to its expected future earnings. The fund is non-diversified.
>
> **Risk:** Growth stocks can perform differently from the market as a whole and can be more volatile than other types of stocks. Stock markets are volatile and can decline significantly in response to adverse issuer, political, regulatory, market, economic or other developments. These risks may be magnified in foreign markets.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

(Request for Judicial Notice, Ex. 2 at 60.)[3/]

Plan participants were therefore told, and the Plan itself believed, that the Sequoia Fund would invest in securities of any market capitalization as long as the fund believed the stock was undervalued and had the potential for growth. In purchasing Valeant, a high-risk, high-reward stock that performed very well right up until the point that it did not, the Sequoia Fund acted entirely consistently with disclosures made to Plan participants. The Court finds that Plaintiffs' Second Consolidated Complaint continues to fail to state a claim, and in actuality advances a theory of liability that is essentially unchanged from the one that the Court previously rejected. Plaintiffs continue to fault the Plan for failing to divine that the market had mis-valued Valeant and for being too heavily concentrated in a stock (that had performed extremely well for the Fund, and by extension Plan participants, in the past). (See, e.g., Opp'n at 9 ("Even the most basic monitoring would have revealed that the Sequoia Fund was acting in stark contrast to its stated investment strategy and becoming extraordinarily and dangerously concentrated in Valeant.") (emphasis added).)

However, the Second Consolidated Complaint continues to fail to contain any allegations of "special circumstances" that could support even an inference that the Plan had any reason not to rely on the market's valuation of Valeant up until the collapse in its price, or to discontinue offering the Seqouia Fund as an investment option. Each of the cases cited by Plaintiffs as supporting their position actually undermine it, as those cases each had allegations which met this standard. See Allen v. GreatBanc Trust Co., 835 F.3d 670, 679-80 (7th Cir. 2016) ("Plaintiffs here accused GreatBanc of failing to conduct an independent assessment of the value of stock and relying instead on an interested party's number. This is enough *680 to give notice of the claim and to allow the suit to proceed."); Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 (8th Cir. 2009) ("The complaint states that appellees did not change the options included in the Plan despite the fact that most of them underperformed the market indices they were designed to track. Finally, it alleges that the funds included in the Plan made revenue sharing payments

---

[3/]    Among other documents, the Plan has requested judicial notice of the Disney Savings and Investment Plan Summary Plan Description. (Request for Judicial Notice, Ex. 2.) The Plan asserts that this document is judicially noticeable under the incorporation by reference doctrine. "That doctrine permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999), as amended (Aug. 4, 1999). The Court finds this ERISA plan document may properly be judicially noticed. See Care First Surgical Ctr. v. ILWU-PMA Welfare Plan, No. CV 14-01480 MMM (AGRx), 2014 WL 6603761, at *4 (C.D. Cal. July 28, 2014) (collecting cases finding ERISA plan documents subject to judicial notice under the incorporation by reference doctrine); see also Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc., 293 F.3d 1139, 1143 (9th Cir. 2002) ("[W]e conclude the SPD is a plan document and should be considered when interpreting an ERISA plan."). Accordingly, Disney's Request for judicial notice is granted as to Exhibit 2, and denied as moot as to the rest of the documents that the Plan seeks to judicially notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

to the trustee, Merrill Lynch, and that these payments were not made in exchange for services rendered, but rather were a quid pro quo for inclusion in the Plan."); United Food & Commercial Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon, No. 13 CV 4484, 2014 WL 4627904, at *4 (N.D. Ill. Sept. 16, 2014) ("The Fund also alleges facts that suggest a plausible reason that BNY Mellon imprudently invested in the Lehman Note: BNY Mellon shared in the upside benefits of collateral investments, but not in the downside risks.").

Moreover, the claims asserted in the Second Consolidated Complaint appear to suffer from an additional defect, not addressed in the parties' briefing. A fiduciary breach of duty claim brought under ERISA is subject to either a three or six year statute of limitations. See 29 U.S.C. § 1113. Section 1113 "creates a general six year statute of limitations, shortened to three years in cases where the plaintiff has actual knowledge, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996). "Under the standard adopted by the Ninth Circuit, the shorter 'statute of limitations is triggered by [plaintiffs'] knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law.'" In re Northrop Grumman Corp. Erisa Litig., No. CV 06-6213 MMM (JCx), 2015 WL 10433713, at *19 (C.D. Cal. Nov. 24, 2015) (quoting Blanton v. Anzalone, 760 F.2d 989, 992 (9th Cir. 1985)).

The Second Consolidated Complaint alleges that the Sequoia Fund first purchased Valeant stock in 2010, (SCC ¶ 69), and that the stock "traded at large multiples of its earnings" throughout the period that the Fund was invested in Valeant. (Id. ¶ 80). Plaintiffs initiated this action on April 1, 2016. Under the theory of liability advanced in Plaintiffs' Second Consolidated Complaint, the Plan's breach of duty occurred when it continued to offer a "value" fund (Sequoia) which had invested in a "growth" stock (Valeant). The alleged breach therefore occurred as soon as a prudent fiduciary would have discovered the Sequoia Fund's investment into Valeant, at a time when Valeant was traded at a sufficiently high price-to-earnings ratio to be considered a growth stock. The statute of limitations would have begun to accrue as of that date, and not at anytime thereafter, such as when the Sequoia Fund increased its investment in Valeant to the point that it held an allegedly dangerously concentrated position, or when the Fund failed to divest itself of the stock despite public outrage over Valeant's drug pricing, growth-by-acquisition strategy, and misleading accounting practices. The Second Consolidated Complaint demonstrates that the Sequoia Fund's investment in Valeant was disclosed to Plan participants and the investing public. (See, e.g., SCC ¶ 69) It therefore appears to the Court that the claims advanced in Plaintiffs' Second Consolidated Complaint are subject to the three-year statute of limitations of 29 U.S.C. § 1113(2), and are untimely under that provision.

**Conclusion**

For all of the foregoing reasons, the Court grants the Plan's Motion to Dismiss. Plaintiffs have requested leave to amend their Second Consolidated Complaint if the Court concludes that it fails to state a claim, but have not identified what additional facts they would allege if given the opportunity to do so. The Court previously granted Plaintiffs an opportunity to amend their complaint to state a claim,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 16-2251 PA (JCx) | Date | April 21, 2017 |
|---|---|---|---|
| Title | In re Disney ERISA Litigation | | |

but they have failed to do so. The Court finds that further amendment would be futile and therefore dismisses Plaintiffs' Second Consolidated Complaint without leave to amend. See Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). The Court will enter a Judgment consistent with this Order.

    Plaintiffs' Motion for Permission to File Motion for Class Certification Nunc Pro Tunc and Take Related Discovery (Docket No. 71) is denied as moot.

    IT IS SO ORDERED.